

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF TWO UNITED STATES POSTAL SERVICE PARCELS SHIPPED TO BEN MCGOUGH, JACKSONVILLE, NC FROM SHAUN CORCORAN, MERIDIAN, ID ON 7/22/20 | Case No. 7:20-mj-1179-RJ<br><br>**Filed Under Seal** |

1. This affidavit is submitted in support of an application authorizing the search of two United States Postal Service (USPS) packages mailed from Boise, ID on July 22, 2020 utilizing return address "Shaun Corcoran, 1740 East Fairview Ave, #80, Meridian, ID" and recipient address "Ben McGough, 2075 N. Marine Blvd, #135, Jacksonville, NC" (the SUBJECT PARCELS). An order from this Court is necessary to authorize the search and subsequent documentation of the contents of the Subject Parcels by the Naval Criminal Investigative Service ("NCIS") and the Federal Bureau of Investigation (FBI). I submit that there is probable cause to believe that the Subject Parcels will contain evidence, in the form of illegally manufactured firearms and silencers, in violation of 18 U.S.C § 922(a).

## YOUR AFFIANT

2. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

3. I have been employed as a Special Agent with NCIS since September of 2015. From 2010, through September of 2015, I served as a Special Agent with the United States

1

Department of State Diplomatic Security Service. I am currently assigned to the NCIS Counterintelligence/Counter Terrorism Unit (CI/CT), Camp Lejeune, North Carolina. As part of my duties as an NCIS agent, I investigate federal crimes, including crimes pertaining to the wrongful sale and/or distribution of firearms. Throughout my career, I have utilized various investigative techniques to identify and intercept parcels containing illegal items.

4. I have also spoken on numerous occasions with informants, suspects, and experienced investigators concerning the manner, means, methods, and practices that firearms traffickers use to further the operation of their organizations and the most effective methods of investigating and dismantling such organizations.

5. I know, based upon my training and experience, that individuals involved in illegal firearms trafficking organizations routinely utilize a number of operational techniques. These practices are designed and implemented to achieve two goals: first, the successful facilitation of the illegal activities, which consists of the illegal transportation and distribution of firearms and the subsequent collection of the proceeds of that illegal activity; and second, minimizing the exposure of organization members, particularly those operating in management roles, from investigation and prosecution by law enforcement.

6. Because this affidavit is being submitted for the limited purpose of obtaining a warrant to inspect the Subject Parcels, it is not intended to include each fact known to your affiant or to the Government. Your affiant has set forth only those facts necessary to support probable cause for the relief sought herein.

7. Based upon an investigation by Special Agents/Task Force Officers of the NCIS,

2

FBI, and USPIS, which has included information provided by telephone records, the collection of information from confidential sources, controlled meetings, financial records, shipping records, and surveillance, your affiant states that there is probable cause to believe that (i) Paul James KRYSCUK is engaged in the commission of violations of federal law, to wit: manufacture and trafficking of firearms and conspiracy to commit such offenses in violation of 18 U.S.C. §§ 922(a); and (ii) the Subject Parcels will contain the above mentioned firearms. Such information will likely provide additional evidence of a crime and/or lead to the discovery of contraband, fruits of a crime, or property intended for/used in the commission of the crimes listed above.

## STATUTORY AUTHORITY

8. 18 U.S.C. § 922(a)(1)(A) makes it unlawful "for any person, except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce."

9. 18 U.S.C. § 922(a)(5) makes it "unlawful for any person (other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector) to transfer, sell, trade, give, transport, or deliver any firearm to any person (other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector) who the transferor knows or has reasonable cause to believe does not reside in (or if the person is a corporation or other business entity, does not maintain a place of business in) the State in which the transferor resides . . . ."

10. The National Firearms Act (NFA), 26 U.S.C. § 5801-72, is a taxing scheme that regulates the manufacture, sale, and transfer of certain types of "firearms" that Congress has

3



deemed to be especially dangerous. The NFA definition of a "firearm" is narrower in scope that that found in Title 18; the NFA definition covers items such as silencers, short-barreled rifles, and machineguns (fully automatic firearms). 26 U.S.C. § 5845.

11. 26 U.S.C § 5861 proscribes certain acts related to NFA firearms, including:

(a) to engage in business as a manufacturer or importer of, or dealer in, firearms without having paid the special (occupational) tax required by section 5801 for his business or having registered as required by section 5802; or

(b) to receive or possess a firearm transferred to him in violation of the provisions of this chapter; or

(c) to receive or possess a firearm made in violation of the provisions of this chapter; or

(d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record; or

(e) to transfer a firearm in violation of the provisions of this chapter; or

(f) to make a firearm in violation of the provisions of this chapter; or

(g) to obliterate, remove, change, or alter the serial number or other identification of a firearm required by this chapter; or

(h) to receive or possess a firearm having the serial number or other identification required by this chapter obliterated, removed, changed, or altered; or

(i) to receive or possess a firearm which is not identified by a serial number as required by this chapter; or

(j) to transport, deliver, or receive any firearm in interstate commerce which has not been registered as required by this chapter.

## PROBABLE CAUSE

12. On November 8, 2019, Newsweek published an article exposing U.S. Marine

4



Lance Corporal Liam J. COLLINS as a member of the Iron March online forum. Various neo-Nazi groups, including the Attomwaffen Division, utilized the Iron March forum as a communications platform and networking tool to organize and recruit for extremist organizations until the forum closed in late 2017. The forum contents, including private messages and posts, were made available to the public on the internet in 2019. The Newsweek article focused on COLLINS and highlighted many of the racist comments he made on the forum. Shortly after publication of the article, NCIS attempted to interview COLLINS regarding his use of the Iron March forum. COLLINS requested the presence of an attorney and declined to comment.

13. A review of posts and messages sent by COLLINS on Iron March revealed COLLINS was an avid recruiter for a group he described as "a modern day SS" that was located in the northeastern region of the United States. COLLINS began posting on Iron March in 2016. COLLINS frequently referenced his plan to join the Marines to gain combat experience and training that he could utilize within his own paramilitary group. In 2017, COLLINS described his group as a paramilitary unit that has members with previous and current military experience in the United States and Poland. COLLINS claimed his group held live fire training exercises and often expressed the importance of people within his movement gaining military experience. When COLLINS and others on Iron March attempted to meet in person or discuss matters that are more sensitive, they would often suggest the use of an encrypted messaging application known as "Wire." COLLINS joined the Marines in August of 2017 and is currently on active duty as an infantryman aboard Camp Lejeune, North Carolina.

14. On April 14, 2020, NCIS developed a Cooperating Witness (CW) who reported

5

COLLINS discussed selling "illegal guns" in the past and is known to openly express racist ideology. The CW expressed to COLLINS that he/she planned to use COVID-19 stimulus money to purchase a Glock handgun from a store in Jacksonville, North Carolina. COLLINS advised the CW that the CW should instead purchase a Glock 19 with no serial number and a silencer through an individual that COLLINS knows. COLLINS, after placing his phone in the microwave, instructed the CW to only discuss this potential transaction in person or via Wire, the application frequently mentioned on Iron March. The CW continued to communicate with COLLINS via Wire regarding the purchase.

15. COLLINS advised the pistol and silencer would cost $1,500 and stated that the advantage to purchasing a pistol and silencer in this manner is that the government would not know the CW had it, and the CW would avoid lengthy wait times for the proper tax stamp. The CW inquired what brand silencer he would receive and Collins stated that there was no brand and it would be a drill pressed titanium/aluminum silencer.

16. Based on my training and experience, I believe this statement from COLLINS indicated that an unlicensed individual would manufacture the silencer for the CW. Silencers manufactured in accordance with the NFA are required to bear a serial number, 26 U.S.C. § 5842. The transfer of a silencer requires a proper tax stamp and that the transfer be approved by the Attorney General. 26 U.S.C. §§ 5811-12.

17. COLLINS told the CW he would assist the CW in attaching the silencer to the pistol when received and indicated it would be shipped from outside of the Camp Lejeune, North Carolina area.

6

18. COLLINS also provided the CW a video of a pistol and functioning silencer being fired into the ground at an unidentified location by an individual with a distinctive tattoo on their right forearm. The CW believes this is a pistol and silencer COLLINS personally owns and has referenced in the past. The tattoo visible in the video was utilized to identify the individual firing the weapon as KRYSCUK.

19. Agents are familiar with KRYSCUK's appearance, as they have reviewed a booking photograph of him from an arrest in Florida. Also, KRYSCUK had a previous career as an adult film actor. These videos are available on the internet. While KRYSUCK used a stage name for these films, agents could visually confirm his identity. In reviewing KRYSCUK's adult films, videos depict KRYSCUK with a tattoo that is consistent in shape, color, and location as that seen in the video of the individual shooting a pistol equipped with a silencer.

20. COLLINS additionally provided a screenshot of the Venmo account the money would be sent to for the pistol and silencer. The account was saved as "@P-James, Paul Kryscuk James" under a contact card labeled as "Deacon" in the phone belonging to Collins. "Deacon" is believed to be a username utilized by KRYSCUK on the Wire application.

21. KRYSCUK does not have any NFA weapons registered in his name.

22. On April 24, 2020, NCIS conducted a controlled meeting between the CW and COLLINS. The meeting was recorded with an audio and video recording device. During the meeting, COLLINS stated that he has made multiple firearms deals with the individual who will be providing the pistol and silencer, completely trusts them, and has known them for years. COLLINS also stated he can get anything the CW wants to include short-barrel rifles and fully

automatic weapons from this individual. COLLINS also confirmed his anti-Semitic and anti-African American views and portrayed himself as an important part of a group whose identity COLLINS was not willing to divulge to the CW.

23. During the controlled meeting, the CW transferred $1,500 in NCIS controlled funds via direct bank transfer to COLLINS in exchange for a Glock model 19 pistol with no serial numbers and a silencer. COLLINS informed the CW the pistol and silencer could take up to six weeks to arrive due to delays related to the COVID-19 pandemic.

24. During the controlled meeting and after the CW transferred the NCIS controlled funds to COLLINS, Agents reviewed bank and financial records from COLLINS, another active Duty Marine (Justin HERMANSON), and KRYSCUK to determine the following. COLLINS utilized a direct bank transfer to send the money to HERMANSON. HERMANSON then sent the money to KRYSCUK, via Venmo. KRYSCUK transferred the money from his Venmo account to his personal bank account. Shortly after receiving the money, KRYSCUK began making purchases from vendors known to sell legal devices called solvent traps that are easily modified using a drill press to make working silencers. Such a modification turns the solvent trap into a silencer, 26 U.S.C. § 5845(a)(7), requiring compliance with the NFA. 26 U.S.C. §§ 5801-5872. The items available from these vendors are consistent with what is visible in the video provided to the CW by Collins of KRYSCUK firing a pistol and silencer.

25. Information provided by the United States Postal Inspection Service (USPIS) indicated KRYSCUK received items from these vendors at his home located at 3897 S. Yorktown Way, Boise, Idaho on April 30, 2020.

8

26. Additional review of financial records revealed HERMANSON made a previous Venmo transfer of approximately $1350.00 to KRYSCUK on April 15, 2020. The timing of this purchase coincides with an "order" COLLINS told the CW he could get in on. In this instance, the money appears to come directly from HERMANSON. KRYSCUK made purchases similar to the above-mentioned purchases shortly after receiving the funds.

27. Agents identified the Internet Protocol (IP) addresses used by KRYSCUK via documents received from Venmo. Information discovered related to these IP addresses indicated the IP address used to establish KRYSCUK's Venmo account was also utilized to post on Iron March as user "Visions_From_Patmos." A review of posts made by this user show direct messages with "Niezgoda," the username utilized by COLLINS. In these messages from early 2017, COLLINS told KRYSCUK about his paramilitary group in the New Jersey area. KRYSCUK expressed interest in meeting in person and COLLINS established alternate means of communication to continue away from the Iron March forum. It was determined in reviewing KRYSCUK's financial records, along with open source internet information, that KRYSCUK moved to Boise, Idaho in January of 2020, that KRYSCUK previously lived in New York the majority of his life, and that KRYSCUK lived in close proximity to COLLINS at the time of these posts.

28. Additional review of Iron March posts made by KRYSCUK revealed a manifesto style post that garnered attention on the forum in March of 2017. In the post, KRYSCUK expressed the importance of colonizing and buying property in areas like the Pacific Northwest for whites and emphasized recruiting individuals with military experience to train National Socialist

9

paramilitaries for use in a coming conflict with the United States. KRYSCUK stated these paramilitaries will be utilized in this conflict that he described as a guerrilla-style ground war he compared to the Iraq war.

29. On June 10, 2020, United States Magistrate Judge Robert Jones considered and approved a search warrant for a set of three packages sent from "Shaun Corcoran, 1740 East Fairview Ave, #80, Meridian, ID" to "Ben McGough, 2075 N. Marine Blvd, U#135, Jacksonville, NC." The return and destination address for the previous warrant are identical to that of the SUBJECT PARCELS. As background, the return address for the SUBJECT PARCELS was previously identified as a location KRYSCUK utilized a fraudulent driver's license bearing the name "Shaun Corcoran" to setup mailbox services.

30. On June 11, 2020 and June 13, 202, NCIS searched the above-mentioned packages subsequent to a federal warrant. The packages contained a complete pistol, silencer, and holster. These items were broken down and distributed among the three packages in what appears to be an attempt to avoid detection. The items examined appear to be consistent with items sold by vendors KRYSCUK made purchases from after receiving money transfers from HERMANSON. The packages were returned to the mail stream once they were searched and documented.

31. On June 12, 2020 and June 13, 2020, NCIS conducted surveillance at the destination location for the above mentioned packages. The packages were all shipped on the same day, but arrived on different days due to a delay at the USPS. In each instance, HERMANSON arrived to the parking lot outside of the destination address. Another active duty Marine, Maxwell WOMACK, arrived in a separate vehicle to meet HERMANSON. WOMACK

10

is a co-signee on the mailbox with MCGOUGH, the addressee.[1] In each instance, WOMACK entered the postal annex, retrieved the package or packages and brought them out to HERMANSON. HERMANSON then returned to his family's home in Swansboro, NC with the items. These actions indicate the pistol and silencer received by HERMANSON June 12 and June 13 are likely what he paid KRYSCUK for on April 15, 2020.

32. On June 17, 2020, United States Magistrate Judge James E. Gates considered and approved a search warrant for an additional set of three packages sent from Boise, ID utilizing return address "Shaun Corcoran, 1740 East Fairview Ave, #80, Meridian, ID" and recipient address "Ben McGough, 2075 N. Marine Blvd, #135, Jacksonville, NC. The return and destination address were again identical to that of the SUBJECT PARCELS. The packages were subsequently searched and found to contain a complete pistol and silencer distributed among the three packages. The pistol and silencer appeared to be manufactured in the same manner as the pistol and silencer previously examined on June 11, 2020 and June 13, 2020. The pistol and silencer were placed back in the mail and surveillance again observed WOMACK pick up the packages at the postal annex on June 18, 2020. In this instance, WOMACK drove his vehicle to the postal annex with an unidentified individual in the passenger seat. Surveillance was not able to discern where WOMACK went after picking up the packages.

33. On June 18, 2020, COLLINS contacted the CW and coordinated a meeting for the next day after work. On June 19, 2020 COLLINS directed the CW to contact an individual later identified as HERMANSON via Wire to coordinate picking up the ordered pistol and silencer.

---

[1] WOMACK, MCGOUGH, HERMANSON, and COLLINS are all in the same military unit.

11

HERMANSON met with the CW and provided a pistol and silencer which were later confirmed to be the items examined on June 17, 2020. During the meeting HERMANSON stated he also had a pistol and silencer that was similar and gave advice on how to make the pistol properly function with the silencer. HERMANSON stated he test fired both pistols. The information provided by HERMANSON indicates he is likely in possession of the pistol and silencer intercepted and examined on June 11, 2020 and June 13, 2020.

34. On July 6, 2020, a review of shipping records indicated KRYSCUK had received packages at his Boise, ID residence from the same previously identified manufacturers known to produce parts that can be modified for use as silencers. KRYSCUK received packages from the same manufacturers prior to sending the silencers previously examined during this investigation. The examined silencers appear consistent with what is sold on the websites of the aforementioned manufacturers.

35. On July 23, 2020, the SUBJECT PARCELS were identified by the USPIS. USPIS informed NCIS the SUBJECT PARCELS were mailed from Boise, ID on July 22, 2020 and should arrive to Jacksonville, NC by July 27, 2020. In this instance, the SUBJECT PARCELS are an array of only two parcels. One parcel is the same size flat rate box used on all of the previous shipments. The other parcel is a heavy flat rate envelope. The SUBJECT PARCELS utilize the same addresses and fictitious name utilized by KRYSCUK on the previous 6 packages, which as a whole contained the components to readily assemble two pistols and two silencers. Investigative efforts are currently underway to identify who may have ordered the SUBJECT PARCELS from KRYSCUK.

12

## SUMMARY

36. As set forth above, there is probable cause to believe that Paul James KRYSCUK is illegally distributing firearms and silencers; and has shipped illegally manufactured firearms and silencers to the Jacksonville, NC area in the Subject Parcels. Thus, the search of the Subject Parcels will provide evidence of KRYSCUK's activities and provide additional information to how KRYSCUK manufactures these items.

## CONCLUSION

37. For the reasons stated above, your affiant believes that there is probable cause to believe that (i) Paul James KRYSCUK is engaged in the illegal distribution and manufacture of firearms and silencers; (ii) that KRYSCUK has mailed illegally manufactured firearms and silencers to Jacksonville, NC (iii) search of the Subject Parcels will provide additional evidence of KRYSCUK's illegal conduct.

38. WHEREFORE, your affiant respectively requests that the Court issue a warrant authorizing members of NCIS, FBI, USPIS, or their authorized representatives, including but not

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

limited to other law enforcement agents and technicians assisting in the above-described investigation, to search the Subject Parcels and document their contents.

Respectfully submitted,

JOHN C. LITTLE
Special Agent, NCIS
Camp Lejeune, NC

On this __24__ day of July, 2020, Special Agent John C. Little, appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this Affidavit.

ROBERT B. JONES, JR.
UNITED STATES MAGISTRATE JUDGE

14